IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Bankruptcy No. 21-20512-CMB |
| JULIANNE CM GUTIERREZ, | Chapter 7 |
| Debtor. | |
| DAVID MARCHITELLO, | |
| Plaintiff, | Adversary No. 21-2056-CMB |
| v. | Related to Doc. No. 1 |
| JULIANNE CM GUTIERREZ, | |
| Defendant. | |

*Appearances*:  David Marchitello, Plaintiff, pro se
Julianne CM Gutierrez, Defendant/Debtor, pro se

**MEMORANDUM OPINION**

The matter before this Court is the *Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge Pursuant to Sections 523 and 727 of the Bankruptcy Code* ("Complaint," Doc. No. 1)[1] filed by David Marchitello, the former spouse of the Debtor, Julianne CM Gutierrez. Upon consideration of the credibility and demeanor of the witnesses, the plausibility of the testimony, the existence of corroborating evidence, and the entire record, for the reasons set forth herein, this Court finds that discharge must be denied.

---

[1] Pursuant to 28 U.S.C. §§157 and 1334, this Court has subject matter jurisdiction. Further, this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J).

1

Background and Procedural History

On March 10, 2021, Debtor filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. The Meeting of Creditors, as required by 11 U.S.C. §341, was held by the Chapter 7 Trustee, Robert Slone, Esq., on April 23, 2021. Later, in the course of determining whether there may be assets available for distribution in this case, the Trustee scheduled a continued meeting (hereinafter, "Continued Meeting of Creditors"). Mr. Marchitello, whose participation in this case began in June 2021, appeared to ask questions of the Debtor at that time.

On June 8, 2021, Mr. Marchitello filed the Complaint commencing this adversary proceeding. In the Complaint, Mr. Marchitello objects to Debtor's discharge pursuant to 11 U.S.C. §727(a)(3) and (a)(4)(A) and seeks a determination of dischargeabilty of debt owed to him pursuant to 11 U.S.C. §523(a)(2)(A), (a)(4), and (a)(6).[2] Within the Complaint, Mr. Marchitello identifies a number of alleged inaccuracies in Debtor's bankruptcy schedules. Debtor answered the Complaint by denying these allegations. *See* Doc. No. 42.[3] Though Debtor is represented by counsel, Douglas Hipp, Esq., in the bankruptcy case, both she and Mr. Marchitello are unrepresented in the adversary proceeding.

Following an opportunity for discovery, trial was held on December 14, 2021. At trial, Mr. Marchitello was sworn in and offered his testimony in support of his Complaint. The testimony consisted primarily of the identification of his exhibits. The Court found his testimony to be credible. Mr. Marchitello did not call any witnesses. He did, however, identify Debtor's testimony at the Continued Meeting of Creditors as critical to a determination in this matter. The audio recording was admitted as an exhibit at trial and has been considered by the Court.

---

[2] The Complaint appears to be missing ¶¶18-21.
[3] Unless otherwise noted, citations are to documents filed in Adv. No. 21-2056.

After Mr. Marchitello concluded his presentation to the Court, Debtor offered her own testimony, presented exhibits, and examined Mr. Marchitello as a witness. Upon observation of the Debtor's testimony at trial and review of the audio of the Continued Meeting of Creditors, Debtor's testimony was often purposefully evasive and convoluted. Debtor appears to employ various strategies to avoid providing a clear explanation regarding the allegations against her, including but not limited to, feigning confusion, changing the subject, and speaking over others. Ultimately, the Court found Debtor was not credible.

Although trial concluded on December 14, 2021, several days later, Mr. Marchitello filed correspondence with the Court identifying newly obtained evidence, a bank statement, which he provided along with an exhibit admitted at trial. *See* Doc. No. 90. As set forth in the Order dated December 23, 2021, Debtor was provided with an opportunity to respond and object to what appeared to be a request to reopen the record to admit the bank statement. Although Debtor filed a response, the Court does not construe the response as an objection to the consideration of the bank statement. *See* Doc. No. 95. Rather, Debtor seems to contend that the exhibit supports her position and fails to prove additional facts for the purpose of reopening the record. Accordingly, the Court considers the bank statement herein.

As both parties were unrepresented, the Court spent a significant amount of time sifting through irrelevant information and intensely reviewing the record to assess the array of evidence and testimony in light of applicable law. The audio recording of trial reveals the animosity that exists between these parties, resulting in the parties speaking over each other and, at times, the Undersigned. Having thoroughly considered the testimony and exhibits, the matter is now ripe for decision.

Findings of Fact

At the time of filing her bankruptcy petition, Debtor identified Mr. Marchitello as holding two claims: (1) a priority unsecured claim in the amount of $800.00 for child support arrears and (2) a nonpriority unsecured claim in the amount of $10,000.00 for a contempt fine. *See* Schedule E/F.[4] Neither claim is identified as contingent, unliquidated, or disputed. *See id.* However, based on the record, it appears the $800.00 debt is no longer owed.[5] With respect to the other debt listed, the $10,000.00 debt was identified by counsel at the Continued Meeting of Creditors as a typographical error that should have been in the amount of approximately $1,000.00. *See* Exhibit A at 29:05-43.[6] Nonetheless, the schedule has not been amended though Debtor contends she requested correction of the typographical error. *See* Audio Recording at 12:03:45-12:04:30.

With respect to the debt owed to Mr. Marchitello relating to a contempt fine, an order was entered in the Court of Common Pleas of Westmoreland County on December 17, 2020, finding Debtor in contempt in the course of the parties' child custody case. *See* Exhibit B. Specifically, the court granted two motions for contempt in favor of Mr. Marchitello and ordered Debtor to *reimburse* Mr. Marchitello attorney's fees in the total amount of $2,000.00.[7] The Court understands this to be the debt alleged to be non-dischargeable.

---

[4] The Court takes judicial notice of the contents of the bankruptcy schedules. *See Symonies v. Sobol (In re Sobol)*, 545 B.R. 477, 488 (Bankr.M.D.Pa. 2016). Debtor's bankruptcy schedules are filed at Case No. 21-20512, Doc. No. 1.

[5] *See* Complaint, at 3; Audio Recording at 10:28:55-10:29:17, 11:48:30-41. Citations to the audio recording of the trial held December 14, 2021, shall be identified herein as "Audio Recording" with reference to the time of trial, which commenced at approximately 10:00 A.M. and concluded shortly after 1:00 P.M. The parties appeared at trial via video conference.

[6] Exhibit A is the audio recording of the Continued Meeting of Creditors. Citations herein will refer to Exhibit A and the applicable timeframe within the forty-two-minute recording.

[7] This Court construes the directive to *reimburse* as requiring payment to Mr. Marchitello for fees expended; however, the parties have made statements and presented evidence calling into question whether the amount was actually owed to and being pursued by Mr. Marchitello's counsel in the family court matters. This issue was addressed in this Court's Order dated September 15, 2021, as various representations were made regarding whether Mr. Marchitello is a creditor of the Debtor. *See* Case No. 21-20512, Doc No. 33. As such, Debtor challenged Mr. Marchitello's standing in the bankruptcy case and, in

In this proceeding, most of the allegations revolve around the Debtor's identification of her property in Schedule A/B and her testimony related to her assets. Within Schedule A/B, Debtor discloses no interest in household goods and furnishings (such as appliances, furniture, linens, china, kitchenware), electronics (such as televisions, computers, printers, cell phones, cameras), or jewelry. She identifies no cash, no deposits of money, no retirement or pension accounts, no interests in insurance policies. In fact, the only property disclosed in Schedule A/B is $600.00 in used women's clothing and shoes. Mr. Marchitello alleges that Debtor failed to disclose all of her property. With respect to jewelry, Waterford and Lenox items, fourteen sewing machines, and various other items, Mr. Marchitello claims he can attest to Debtor's ownership as he was the purchaser or otherwise aware of her possessions at the conclusion of their marriage. *See* Audio Recording at 10:23:29-10:24:12. Although the Court finds Mr. Marchitello to be credible, the parties separated in December 2012 and divorced in October 2014, long before the commencement of this bankruptcy case and the completion of Debtor's bankruptcy schedules in 2021. *See* Exhibit A at 3:10-28. Nonetheless, Mr. Marchitello alleged Debtor was not being forthright and sought information related to Debtor's assets.

With respect to jewelry owned by Debtor, Mr. Marchitello identifies and sought information from Debtor regarding the following: 1.8 carat ring, diamond necklaces, diamond

---

particular, his ability to pursue the adversary proceeding. Ultimately, on December 14, 2021, Debtor's bankruptcy counsel filed an Amended Statement providing that, based upon the state court dockets, Mr. Marchitello appears to be a creditor at the time the case was filed. *See* Case No. 21-20512, Doc. No. 45. Attached to the Amended Statement is the Order dated December 17, 2020. As such, the question regarding Mr. Marchitello's standing as a creditor is resolved. The Court further notes that Mr. Marchitello also presented an order dated May 5, 2021, granting another motion for contempt and directing Debtor to reimburse attorney's fees in the amount of $1,000.00. *See* Exhibit C. However, as stated in 11 U.S.C. §727(b), the discharge under §727(a) "discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case."

earrings, and a Rolex watch. *See* Audio Recording at 10:23:33-44, 10:39:20-52; Exhibit K.[8] The Court finds Mr. Marchitello's testimony credible that he gifted these items to Debtor prior to their separation. When Debtor was questioned by the Trustee at the Continued Meeting of Creditors, Debtor was evasive in her response regarding jewelry she received in the past and did not acknowledge the receipt of any specific item. *See* Exhibit A at 7:45-9:15, 10:30-12:55. At trial, Debtor argued that, without seeing receipts or more detailed descriptions, she is unable to recall these items. *See* Audio Recording at 11:51:55-11:52:30, 11:55:00-11:56:05. While some of the descriptions are general, Mr. Marchitello specifically identified a 1.8 carat ring, which he valued at $15,000.00,[9] and a gold Rolex watch, for which Mr. Marchitello provided proof of purchase in the amount of $611.09. *See* Exhibit M. With respect to the watch, Debtor contends she simply cannot recall the method used to sell the item; curiously, she seems to recall that the sale occurred in 2013. *See* Audio Recording at 11:52:31-11:53:17.[10] As to a ring of such an allegedly substantial value, it is simply not credible that Debtor was unable to unequivocally confirm or deny receipt of the item without viewing proof of Mr. Marchitello's purchase.[11] Seemingly inconsistent with Debtor's inability to recollect such a valuable item is her testimony that she has "an exceptionally excellent memory." *See* Audio Recording at 11:49:55-11:50:13.

---

[8]     *See also* Audio Recording at 11:09:07-11:11:29 (addressing admission of Exhibit K and, despite Debtor's comments regarding Mr. Marchitello's failure to serve her with discovery, the acknowledgment that she nonetheless obtained the documents from the docket to respond).
[9]     Although the Court makes no finding regarding the actual value of the ring, it is sufficient for the purposes of this opinion that the ring was clearly a valuable asset.
[10]     Debtor repeatedly argued that Mr. Marchitello did not clearly identify items, and she repeatedly testified as to her excellent memory. *See* Audio Recording at 11:49:55-11:50:13, 11:57:02-32. However, no information could be provided regarding the watch despite the precise description of the watch and Debtor's excellent memory.
[11]     The only conceivable explanation would seem to be that Debtor possessed multiple rings that could fit the description. Such an explanation was not provided and, in any event, would only raise more questions regarding disclosure of assets.

Regardless of whether Debtor acknowledges receipt of specific items of jewelry, Debtor maintains that she had no jewelry remaining in her possession at the time of filing her bankruptcy case.[12] Initially, Debtor indicated she sold her jewelry through eBay and Craigslist. *See* Exhibit A at 7:40-9:15. However, when the Trustee specifically inquired about records of the sales, Debtor testified that she was unable to view sales from eBay dating back to 2012 through 2014 and further she maintained no records from sales of jewelry at garage sales, yard sales, estate sales, and the like from so long ago. *See* Exhibit A at 10:35-11:25. As observed by the Trustee, some of the jewelry allegedly owned by Debtor had substantial value; however, when asked if she could estimate how much she received from the sales, Debtor testified to receiving approximately a couple hundred dollars. *See* Exhibit A at 10:35-12:52. Notwithstanding this meager amount, Debtor testified that she sold a lot of items, including jewelry that belonged to her mother as well as jewelry she received during a previous marriage. *See* Exhibit A at 11:40-12:52.

In the course of discovery, Mr. Marchitello sought proof of Debtor's sales of jewelry, including the ring, which appears to be the item with the most significant value. *See* Exhibit K. Mr. Marchitello credibly testified and submitted evidence that records of transactions dating back to 2012 could be obtained through eBay contrary to Debtor's testimony at the Continued Meeting of Creditors. *See* Audio Recording at 10:26:08-10:27:15; Exhibit J. Despite his requests, Mr. Marchitello credibly testified that the records were not provided to him. *See* Audio Recording at 10:26:08-10:27:27, 10:38:20-10:39:57. At trial, Debtor testified that her eBay history was provided to her bankruptcy counsel, who was to provide the information to Mr. Marchitello,

---

[12] According to Debtor, she was forced to sell the items due to financial distress around the time of the parties' divorce. *See* Exhibit A at 7:45-9:17, 10:35-12:51. Mr. Marchitello contends Debtor was not in financial distress following their separation as he was making substantial support payments to Debtor at that time while she was living with her mother. *See* Audio Recording at 10:45:15-10:47:25. Mr. Marchitello cast doubt on Debtor's testimony of financial distress, and the Court did not find Debtor's testimony credible. *See* Exhibit A at 20:20-24:00.

though she does not know if that was done. *See* Audio Recording at 11:53:05-11:53:26.[13] However, Debtor was not represented by counsel in this adversary proceeding, and she provides no explanation as to why her bankruptcy counsel was to respond to the discovery requests. Debtor provides no justifiable explanation for her failure to provide the information requested by Mr. Marchitello. In response to his request for documentation of her jewelry sales, specifically her eBay history, Debtor makes no mention that she obtained the information; instead, she responds generally that "many items have previously been sold during multiple garage sales, listed on eBay or [C]raigslist or FaceBook Marketplace." *See* Exhibits K and 9. However, at trial, Debtor testified that her eBay history showed the sale of a ring that *might* be the ring at issue in this proceeding. *See* Audio Recording at 11:55:00-11:56:11. She provided no details regarding the alleged sale. Despite this clearly relevant evidence, the records were not offered at trial.[14]

In addition, Mr. Marchitello contends Debtor failed to disclose numerous items she obtained from their marriage, nor did she include the furniture, artwork, and computer visible during the trial being conducted via video conference. *See* Audio Recording at 10:23:25-10:24:32. Debtor provided conflicting statements regarding the items in her home. At one point, she represented that her current husband filed his own bankruptcy petition and identified all the assets within their home in his case. *See* Audio Recording at 11:30:40-11:32:03. At another point in trial, Debtor represented that she does not know what her husband listed in his bankruptcy case. *See* Audio Recording at 11:13:30-45. The schedules in the bankruptcy case filed by Debtor's spouse were not presented as evidence. Nonetheless, whether Debtor's current spouse identified certain

---

[13]  *See also* Audio Recording at 11:08:06-30.
[14]  The Debtor's testimony changes to accommodate her position. First, she testified at the Continued Meeting of Creditors that sales occurred via eBay and Craigslist. When pressed regarding records of sales (from sites where presumably records could be obtained), Debtor added that sales also occurred at yard sales, garage sales, and estate sales. In response to Mr. Marchitello's contention that the eBay records could easily be obtained, Debtor testified the records were obtained and provided to her bankruptcy counsel.

assets in his own bankruptcy schedules could not have impacted how Debtor identified assets in this case. *See* Audio Recording at 11:31:00-11:32:20. *See also In re Eugene Gutierrez, Jr.*, Case No. 21-21770-GLT (filed approximately five months *after* Debtor's petition). Further, the identification of assets by Debtor's spouse does not preclude the possibility that certain assets were jointly owned, requiring disclosure in both cases. Therefore, Debtor's comments regarding her husband's bankruptcy filing provide no convincing support for her contentions.

As further evidence of Debtor's failure to disclose her assets beyond the $600.00 in used women's clothing and shoes, Mr. Marchitello testified and provided proof of a yard sale Debtor held just several months post-petition. *See* Audio Recording at 10:25:12-23, 10:43:52-10:45:03; Exhibit N; Exhibit A at 25:01-28:08. When confronted with the post-petition sale, Debtor was evasive as to whether the items at the sale belonged to her; however, based on the record, the Court finds at least some of the items, including sewing machines, belonged to Debtor and did not fit within the description of used women's clothing and shoes. *See* Exhibit A at 25:01-28:08; Exhibit N.[15] Notably, according to Debtor, "there was a lot of stuff sold." *See* Exhibit A at 26:17-27:06. In fact, Debtor represented that sale proceeds exceeded $100.00. *See* Exhibit N. The profit from the post-petition sales is noteworthy considering the mere $600.00 in assets disclosed.[16]

---

[15]  *See also* Audio Recording at 11:12:58-11:14:25 (addressing admission of Exhibit N).
[16]  Debtor's credibility with respect to her assets is undermined by the record. In addition to items identified by Mr. Marchitello that Debtor possessed at the conclusion of their marriage, Debtor also received a lump sum payment in the approximate amount of $320,000.00 at the time of their divorce in 2014. *See* Exhibit A at 4:40-5:25. Of that amount, Debtor used approximately $141,000.00 to purchase her residence, which was subsequently transferred into the name of her current spouse in 2016. *See* Exhibit A at 5:00-6:51. Notwithstanding the remaining funds following the purchase of the residence, the items Debtor possessed at the conclusion of her marriage from Mr. Marchitello, and what appeared to be a furnished home at the time of trial, Debtor disclosed only $600.00 in clothing and shoes. A full review of Debtor's schedules casts further doubt on Debtor's disclosure of assets in this case. Though the Court makes no finding on this basis, Debtor identifies a significant amount of unsecured debt that appears to be credit card debt, yet Debtor discloses few assets. The Debtor's evasive testimony coupled with the post-petition sales demonstrate a lack of candor.

At trial, Mr. Marchitello introduced evidence that, prior to their divorce, Debtor maintained a life insurance policy, Roth IRA (with a value of approximately $20,000.00), and Vanguard IRA (with a value of approximately $25,000.00). *See* Exhibit P. Because these were not disclosed in Debtor's Schedule A/B, Mr. Marchitello specifically inquired and sought proof of liquidation prior to the bankruptcy filing. *See* Audio Recording at 10:28:14-56, 10:40:10-28, 10:48:20-10:50:35; Exhibit K. Debtor provided no documentation in response to Mr. Marchitello's request. In her response to discovery requests, Debtor generically states that she "provided the required documentation for bankruptcy filing (bank statements, income tax returns, etc.) and current counsel has verified same." *See* Exhibit 9. Debtor offered no documents or explanation as to what happened to these specific assets.[17] While it is certainly plausible that an individual may not possess records related to assets she no longer owns, Debtor offered no credible explanation regarding when she may have disposed of these assets.

Finally, in his supplementation of the record, Mr. Marchitello identifies a post-petition debit from a joint bank account in the name of Debtor and her spouse. *See* Doc. No. 90.[18] The debit is for an insurance premium payment and is offered to confirm the continued existence of the undisclosed life insurance policy. *See id*. In Debtor's response, she acknowledges the *existence* of the policy but takes issue with Mr. Marchitello's *description* of the policy. *See* Doc. No. 95. No explanation is provided as to why the policy was not identified in Schedule A/B. Nonetheless, after being on notice for approximately six months of the challenges to her schedules and having more than ample time to thoroughly review the schedules, Debtor testified that the only error in her

---

[17] *See* Audio Recording at 11:16:08-11:17:24 (indicating she did not keep records from so long ago).
[18] Notably, in Schedule A/B, Debtor denied having any legal or equitable interest in deposits of money, including checking, savings, or other financial accounts. Debtor's denial is inconsistent with the bank statement supplied by Mr. Marchitello. *See* Doc. No. 90 (providing a post-petition joint bank statement in the names of Eugene Gutierrez and Julianne Chuhran Marchitello Gutierrez).

10

schedules is the typographical error listing the debt owed to Mr. Marchitello as $10,000.00. *See* Audio Recording at 12:03:45-12:04:00. With these facts in mind, the Court considers the challenges to Debtor's discharge and the request for determination of dischargeability.

Conclusions of Law

As set forth in the Complaint, Mr. Marchitello is objecting to the Debtor's discharge pursuant to 11 U.S.C. §727(a)(3) and (a)(4)(A). He is also seeking a determination as to the dischargeability of the debt owed to him pursuant to 11 U.S.C. §523(a)(2)(A), (a)(4), and (a)(6). The Court will first address the objections to discharge under §727 as the denial of Debtor's discharge would eliminate the need for the determination of the dischargeability of a particular debt.

Denial of discharge is granted only in extreme circumstances. *See Lepre v. Milton* (*In re Milton*), 595 B.R. 699, 709 (Bankr.W.D.Pa. 2019). Although objections to discharge are liberally construed in favor of the debtor, a discharge is a privilege intended only for the honest but unfortunate debtor. *See Melaragno v. Lybrook* (*In re Lybrook*), 544 B.R. 537, 543 (Bankr.W.D.Pa. 2015). Mr. Marchitello bears the burden of proof, by a preponderance of the evidence, with respect to his objection to Debtor's discharge. *See id.*

Because the allegations in this case primarily revolve around Debtor's alleged failure to disclose assets and inconsistencies in her testimony regarding her assets, the Court begins the analysis with §727(a)(4)(A), which provides for denial of a discharge if "the debtor knowingly and fraudulently, in or in connection with a case…made a false oath or account[.]" The purpose of this provision is "to ensure that the debtor provides honest and reliable information to the trustee and others interested in the administration of the bankruptcy estate without their having to conduct costly investigations to discover the debtor's true financial condition." *See Walnut Meadows, LLC*

11

*v. Tzabari* (*In re Tzabari*), 622 B.R. 332, 340 (Bankr.E.D.Pa. 2020). The following elements must be proven under §727(a)(4)(A):

>  (1) the debtor made a statement under oath;
>
>  (2) the statement was false;
>
>  (3) the debtor knew the statement was false;
>
>  (4) the debtor made the statement with the intent to deceive; and
>
>  (5) the statement related materially to the bankruptcy case.

*See Lybrook*, 544 B.R. at 544 (citing *Cadle Co. v. Zofko*, 380 B.R. 375, 382 (W.D.Pa. 2007)). Based on the foregoing, the Court considers the relevant statements made by Debtor to determine if the elements are met.

The first element is easily met. The allegations in this proceeding relate primarily to the failure to disclose assets in Debtor's Schedule A/B and Debtor's testimony related to her assets. Statements made within the schedules are statements made under oath. *See Lybrook*, 544 B.R. at 544. The Court also considers Debtor's testimony at the Continued Meeting of Creditors and at trial. In the course of this proceeding, Debtor made numerous statements under oath related to her assets and the alleged disposition of assets.

Based on the credible evidence, the Court finds Debtor made false statements under oath. When confronted about certain specific assets that were not disclosed, the Court finds Debtor's testimony was not credible. Debtor's inability to recall receiving the 1.8 carat ring (valued by Mr. Marchitello at $15,000.00) is simply not plausible nor is it plausible that Debtor does not recollect any details regarding its alleged disposition despite her "exceptionally excellent memory." To the extent Debtor briefly alluded to her eBay history as *possibly* showing the sale of the ring, the failure to produce the records specifically requested by Mr. Marchitello is inexplicable and appears to be

a fabricated explanation. Further, Debtor's testimony at the Continued Meeting of Creditors that she sold all her jewelry and may have received only a couple hundred dollars is not credible in light of Mr. Marchitello's identification of at least two pieces of jewelry with values far in excess of that amount. In addition to what the Court finds as false statements regarding Debtor's jewelry, Debtor failed to identify the insurance policy in her Schedule A/B despite the evidence of post-petition payment of premiums. Debtor failed to either (1) identify the IRA accounts in her Schedule A/B or (2) offer any information relating to the liquidation of the accounts even if she no longer possessed records requested by Mr. Marchitello. Once again, her failure to recollect and provide any details regarding these assets is simply not credible. In addition, the Court was provided with evidence of Debtor's post-petition yard sale. Mr. Marchitello proved that Debtor offered assets for sale post-petition that did not fit within the category of used women's clothing and shoes. Based on the foregoing, the Court finds Debtor made false statements regarding her assets in her Schedule A/B, testimony at the Continued Meeting of Creditors, and testimony at trial.

The Court next considers whether the false statements were knowingly false as opposed to an honest mistake or oversight. This element is met if a statement is known by the debtor to be false, made by the debtor without belief in the truth of the statement, or made with reckless disregard for the truth. *See Tzabari*, 622 B.R. at 340. With respect to the ring, the Debtor's testimony regarding her inability to recall the item or any details regarding its alleged disposition was simply not credible. Further, as to her testimony that she sold all her jewelry and only received a couple hundred dollars from the sales, based on the items identified, the Court finds that statement to be knowingly false. Having the benefit of reviewing the testimony at the Continued Meeting of Creditors and observing Debtor's demeanor at trial, the Court finds Debtor's evasive responses and explanations to be made without belief in the truth of the statements. Likewise, there

Document    Page 14 of 18

is no question that, given the yard sale held shortly after the petition date, Debtor knew she owned more than a mere $600.00 worth of used clothing and shoes. This demonstrates a reckless disregard for the truth. Further, despite the explicit language of Schedule A/B, Debtor also failed to identify her interest in a life insurance policy. Mr. Marchitello pointed this out in his Complaint filed in June 2021, requested information related to the policy in discovery, included evidence at trial regarding the policy, and supplemented the record with evidence of post-petition premium payments by Debtor. In response to Mr. Marchitello's supplementation of the record, Debtor appears to take issue with Mr. Marchitello's *description* of the policy, not the *existence* of the policy. *See* Doc. No. 95. If the omission had been mere oversight, the error could have been easily corrected by amendment of the schedule or, at least, acknowledgement of the error at trial with some explanation.[19] Notwithstanding the foregoing, at trial, Debtor identified only one error in her schedules which she believed required amendment; that was the typographical error identifying the debt to Mr. Marchitello. Accordingly, despite the opportunity at trial to correct any potential oversight or misstatements or clarify her prior statements, Debtor instead chose to adhere to false statements and recklessly disregard the truth.

With respect to whether there was an intent to deceive, "[f]raudulent intent may be proven by circumstantial evidence or inferred from a pattern of nondisclosure and concealment." *See Giansante & Cobb, LLC v. Singh* (*In re Singh*), 433 B.R. 139, 154 (Bankr.E.D.Pa. 2010) (citing *Zofko*, 380 B.R. at 383). Based on this record, the Court easily concludes that Debtor made

---

[19] Debtor offered no defense for the omission until proof of the premium payments was provided. In response, she seems to offer the excuse that the life insurance policy coincides with another portion of her schedules. *See* Doc. No. 95. To the extent Debtor cites to 4.25 of Schedule E/F (which appears to be a typographical error intended to be 4.24), the fact that Prudential is identified as a creditor with respect to a loan does not justify or provide an innocent explanation for the failure to identify the policy in Schedule A/B. The failure to provide clarification prior to this point demonstrates reckless disregard for the truth. Debtor's cavalier attitude toward her obligation of disclosure is apparent.

statements with the intent to deceive. Upon observation of Debtor's demeanor, the Court finds that Debtor's testimony was designed to obfuscate rather than provide transparency regarding her assets. Regarding valuable items of jewelry, Debtor's responses were purposefully evasive regarding receipt and alleged disposition of items. Though she initially stated she could not obtain her eBay records of sales, when faced with proof that such records could be obtained, she testified to obtaining the records but nonetheless failed to produce them. The failure to initially disclose the life insurance policy, respond to discovery requests related thereto, or provide any clarification regarding the policy further demonstrate an intent to conceal. When confronted about the post-petition yard sale, Debtor initially resisted but ultimately acknowledged she owned some of the items. While the sale may not establish the existence of assets of much value, the fact that the sale occurred post-petition coupled with the Debtor's testimony regarding the sale establishes a lack of transparency and intent to conceal and deceive.[20] Based on careful consideration of the record and most significantly, the observation of Debtor's demeanor at trial, the Court finds Debtor's statements to be knowingly fraudulent and made with an intent to deceive thereby hindering the investigation into her assets and delaying the case.

> The final element under §727(a)(4)(A) addresses the materiality of the statements at issue.
>
> This requirement obviously is designed to screen out cases involving *de minimus*, trivial or completely irrelevant falsehoods that could otherwise cause a debtor to be denied a discharge. The test for materiality is "whether the subject matter of the false oath 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'"

---

[20] Such conduct casts further doubt on Debtor's statements regarding other items she clearly possessed (such as home furnishings and electronics) but allegedly did not own or claim any interest in for the purpose of identifying additional assets in Schedule A/B. However, Debtor made general representations of reliance on counsel. Objections to discharge are construed in favor of Debtor, and advice of counsel can negate fraudulent intent. Notably, however, Debtor's false statements in this case are not limited to alleged errors or omissions in her schedules that can be excused on the claim of reliance on counsel.

*See Lybrook*, 544 B.R. at 548 (citing *Zofko*, 380 B.R. at 383). The false statements clearly relate to the discovery of assets and the existence and disposition of Debtor's property. Though some of the items may be of little value, such as the property sold at the post-petition yard sale, "[t]he omission of assets having even little value can be material, and proof of actual harm to creditors caused by the omission is not necessary." *See Lybrook*, 544 B.R. at 548. *See also Wolfington v. Vara (In re Money Ctrs. of America)*, No. 19-1392-CFC, 2020 WL 6709971, at *8, 2020 U.S. Dist. LEXIS 213572, at *22 (D.Del. Nov. 16, 2020). The Court has further considered the totality of the false statements and is convinced that these falsehoods rise above a mere *de minimus* or trivial misstatement. *Cf. Milton*, 595 B.R. at 709-712 (finding a failure to demonstrate the materiality of debtor's statements regarding whether she held miscellaneous property belonging to a creditor and her asserted interest in property of clearly disputed ownership). As such, the materiality element is met under §727(a)(4)(A).[21]

The unfortunate but inevitable conclusion is that Debtor must be denied a discharge. Had there been a single omission promptly corrected or a satisfactory explanation provided, denial of discharge may not be appropriate. However, this is simply not the case. Instead, it is the totality of the false, deceptive, and evasive statements that convince the Court that denial of discharge is the

---

[21] Through Mr. Marchitello's supplementation of the record, the Court is also aware of a joint bank account though no bank accounts were identified in Schedule A/B. Debtor's reference to the bank statement in her "correct legal name" demonstrates another example of a knowing failure to disclose. *See* Doc. No. 95. At trial, Mr. Marchitello did not address the existence of a non-disclosed bank account, and the Court does not consider the existence of the bank account to be outcome determinative. However, the Debtor's interest in a financial account is also confirmed by a review of Debtor's own exhibits. In her Response to Plaintiff's Discovery Requests, Debtor represents that she "provided the required documentation for bankruptcy filing (bank statements, income tax returns, etc.) and current counsel has verified same." *See* Exhibit 11. Even if Debtor's counsel was provided the documents and did not list the account, Debtor was to review the schedules and, indeed, certified to doing so under oath. Further, Schedule A/B explicitly seeks identification of ownership or any interest in deposits of money, with examples of checking, savings, or other financial accounts. That is a factual question that does not require an attorney for interpretation. *See Atkinson v. Nucci (In re Nucci)*, No. 16-1303, 2017 WL 4286561, at *4, 2017 Bankr. LEXIS 3276, at *10 (Bankr.D.N.J. Sept. 26, 2017)(finding that whether the debtor had any IRAs was a factual question that did not require his attorney's interpretation).

only appropriate conclusion. The denial of discharge is a drastic remedy and is a step this Court does not take lightly. However, it is Debtor's obligation to provide honest and reliable information rather than burden the trustee or creditors with an investigation into her financial condition. A discharge is a privilege reserved for the honest debtor, and the operation of the bankruptcy system requires candor. *See Lybrook*, 544 B.R. at 552. Transparency is mandatory for the system to function properly. A debtor cannot be permitted to pick and choose which assets are worth disclosing, respond evasively, confuse the record, and conveniently change positions when backed into a corner. Because denial of Debtor's discharge is required under §727(a)(4)(A), the Court need not reach Mr. Marchitello's alternative argument that denial of discharge is appropriate under §727(a)(3).[22] Further, determining whether the debt owed to Mr. Marchitello is excepted from discharge is also unnecessary as Debtor is not entitled to a discharge of any of her debts in this case.[23]

---

[22] Section 727(a)(3) requires a determination of whether a "debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained." Here, Debtor failed to produce documents in response to discovery requests, even documents that could have been easily provided, such as records related to the life insurance policy and records of her eBay sales. However, it has been observed that §727(a)(3) is generally inapplicable where a consumer debtor does not operate a business. *See Symonies v. Sobol* (*In re Sobol*), 545 B.R. 477, 497 (Bankr.M.D.Pa. 2016).

[23] As to the relief sought pursuant to §523(a)(2), (4), and (6), the facts were undeveloped, and the legal arguments were unclear. Notwithstanding the provisions cited by Mr. Marchitello in his Complaint, he seems to contend that the debt should be nondischargeable as it resulted from an order arising in the family court proceedings. As Mr. Marchitello is pro se, the Court construes this potentially as an argument pursuant to §523(a)(5). There is authority to support the nondischargeability of the debt as a domestic support obligation. *See Louttit v. Armell* (*In re Louttit*), 473 B.R. 663 (Bankr.W.D.Pa 2012). Upon review of the order entered by the family court on December 17, 2020, the awards of attorney's fees to Mr. Marchitello relate to Debtor's failures to make payments for the treatment of the parties' minor child, which may be construed as payments in the nature of support for the child.

<u>Conclusion</u>

Based on the foregoing, after intense review of the record and assessment of the credibility of the witnesses, the Court finds Debtor is not entitled to a discharge in this case. Debtor's discharge is denied pursuant to 11 U.S.C. §727(a)(4)(A). An Order will be entered consistent with this Memorandum Opinion.

Date: <u>March 1, 2022</u>         <u>/s/ Carlota M. Böhm</u>
Carlota M. Böhm
Chief United States Bankruptcy Judge

FILED
3/1/22 10:42 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**MAIL TO:**

Office of the United States Trustee

David Marchitello
4 Crystal Court
Irwin, PA 15642

Julianne CM Gutierrez
366 Nature Trail Lane
Murrysville, PA 15668